[Cite as *In re A.W.*, 2016-Ohio-7297.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103269**

# IN RE: A.W.
# A Minor Child

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-15-102040

**BEFORE:** Celebrezze, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 13, 2016

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
55 Public Square, 21st Floor
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Laura C. Hoffman
Sheree Collins
Assistant County Prosecutors
Juvenile Justice Center
9300 Quincy Avenue, 4th Floor
Cleveland, Ohio 44106

Scott C. Zarzycki
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, A.W. ("appellant"), brings this appeal challenging the juvenile court's finding of delinquency on one count of carrying a concealed weapon, and one count of having a weapon while under disability. Specifically, appellant argues that the juvenile court's findings of delinquency are not supported by sufficient evidence and are against the manifest weight of the evidence. Furthermore, appellant argues that the juvenile court erred by allowing Cleveland Police Officer Melvin Gonzalez's testimony regarding bootprints he discovered at the scene. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} The instant matter arose from an incident that occurred on February 11, 2015, at the intersection of Neff Road and East 185th Street in Cleveland. Witnesses observed a group of three to five males pursuing appellant. The chase began at a gas station and continued to the parking lots of two nearby banks. At one point during the chase, Firefighter Matthew Holian ("Holian") and Lieutenant Frank Corrigan ("Corrigan") of the Cleveland Fire Department saw appellant pull a gun from his waistband and point it at the males who were pursuing him. After observing the gun, the firefighters notified the police and provided a description of appellant's clothing. The group of males continued to pursue appellant, some chasing him on foot and others trying

to catch up to him in a car. Holian and Corrigan lost sight of appellant as he ran southbound on East 185th Street.

{¶3} As officers were responding to the intersection, they observed appellant and another male jump a fence and run through the parking lot of Muldoon's Saloon & Eatery ("Muldoon's"). Officers detained appellant and the other male at the intersection of East 185th Street and Villaview Road, and determined that neither male was carrying a gun. Officers began "backtracking" in the direction that the males had been running, following footprints in the snow. Cleveland Police Officer Jonathan Holub testified that officers located a gun in the snow "approximately 200 yards north of * * * where [officers] had detained the two males." Furthermore, Cleveland Police Officer Melvin Gonzalez explained that he found "two fresh footprints of a boot and the gun in the snow." Officer Gonzalez proceeded to compare the males' shoes to the footprints in the snow near the gun. Officer Gonzalez determined that appellant's boots matched the impression in the snow.

{¶4} Officers brought Holian and Corrigan to the location where they detained appellant and the other male and asked them if they could identify the individual who they observed with a gun. Based on appellant's clothing, Holian and Corrigan both identified appellant as the individual who was carrying a gun.

{¶5} In Cuyahoga Juvenile C.P. No. DL-15-102040, the state filed a complaint charging appellant with carrying a concealed weapon, in violation of R.C. 2923.12(A)(2),

with furthermore and forfeiture specifications; and having a weapon while under disability, in violation of R.C. 2923.13(A)(2), with one- and three-year firearm specifications and a forfeiture specification. Appellant pled not guilty to the charges, and the matter proceeded to trial.

{¶6} The following witnesses testified at trial: (1) Holian, (2) Corrigan, (3) Cleveland Police Firearms Examiner Kristin Koeth ("Koeth"), (4) Officer Holub, and (5) Officer Gonzalez. At the close of trial, the juvenile court adjudicated appellant delinquent on both counts. The state nolled the one- and three-year firearm specifications charged in Count 2.

{¶7} At sentencing, the juvenile court heard from the probation department, the Ohio Department of Youth Services ("ODYS") committee, the prosecutor, appellant's counsel, and appellant's mother. The juvenile court lifted the suspended commitment that it had imposed in Cuyahoga Juvenile C.P. No. DL-14-112517 after adjudicating appellant delinquent of felonious assault, in violation of R.C. 2903.11(A)(2), with a one-year firearm specification; and criminal damaging or endangering, in violation of R.C. 2909.06(A)(1). The juvenile court imposed a commitment with ODYS for a minimum period of 12 months and a maximum period not to exceed appellant's 21st birthday for the offenses of felonious assault and criminal damaging or endangering. Furthermore, for the offenses of carrying a concealed weapon and having a weapon while under disability, the juvenile court imposed a commitment with ODYS for a minimum

period of six months and a maximum period not to exceed appellant's 21st birthday on each count. The juvenile court ordered appellant to serve the carrying a concealed weapon and having a weapon while under disability counts concurrently to each other but consecutively to the felonious assault and criminal damaging or endangering counts.

{¶8} Appellant filed the instant appeal assigning three errors for review:

I. The juvenile court committed reversible error when it permitted testimony and conclusions by Officer Melvin Gonzalez regarding a match of a boot to footprints near the gun found by police.

II. The evidence was insufficient that [appellant] possessed a gun.

III. The delinquency adjudications were against the manifest weight of the evidence.

## II. Law and Analysis

### A. Officer Gonzalez's Testimony

{¶9} In his first assignment of error, appellant argues that the juvenile court committed reversible error by allowing Officer Gonzalez to testify that appellant's boots matched the footprints found near the gun.

{¶10} The state contends that the juvenile court did not err by allowing Officer Gonzalez's testimony because his opinion testimony was based upon measurements and the visual match of the treads.

{¶11} During trial, appellant's counsel objected to Officer Gonzalez's testimony regarding his comparison of appellant's boots to footprints in the snow next to the gun,

arguing that Officer Gonzalez had not been qualified as a scientific identification expert. The state argued that Officer Gonzalez was not testifying as an expert witness, and that he was offering his lay opinion that appellant's boots matched the footprints in the snow. The juvenile court overruled appellant's counsel's objection and permitted Officer Gonzalez to offer his lay opinion testimony.

{¶12} The admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Taylor*, 8th Dist. Cuyahoga No. 98107, 2012-Ohio-5421, ¶ 22, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 16-18 (2d Dist.), citing *Black's Law Dictionary* 11 (8th Ed.2004). Furthermore, this abuse of discretion must have materially prejudiced the defendant. *State v. Lowe*, 69 Ohio St.3d 527, 532, 634 N.E.2d 616 (1994), citing *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984).

{¶13} Evid.R. 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶14} "Under Evid.R. 701, courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified

under Evid.R. 702." *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 74, citing *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737 (2001). This court has consistently recognized that the testimony of a state's witness, who is not presented as an expert, is properly admitted under Evid.R. 701 when (1) the testimony is based on the witness's training or experience, (2) the testimony relates to the witness's personal observations with the investigation, and (3) the testimony is helpful to determine a fact at issue. *See, e.g., State v. Wilkinson*, 8th Dist. Cuyahoga No. 100859, 2014-Ohio-5791, ¶ 52-53; *Primeau* at ¶ 75; *State v. Cooper*, 8th Dist. Cuyahoga No. 86437, 2006-Ohio-817, ¶ 18.

{¶15} In *State v. Jells*, 53 Ohio St.3d 22, 559 N.E.2d 464 (1990), the Ohio Supreme Court concluded that a police officer's testimony on footprint comparisons was admissible as lay opinion testimony:

> a lay witness may be permitted to express his or her opinion as to the similarity of footprints if it can be shown that his or her conclusions are based on measurements or peculiarities in the prints that are readily recognizable and within the capabilities of a lay witness to observe. This means that the print pattern is sufficiently large and distinct so that no detailed measurements, subtle analysis or scientific determination is needed. In such a situation, the pattern is simply identified as being similar to that customarily made by shoes. In essence, the testimony is "more in the nature of description by example than the expression of a conclusion." *See* [*State v. Hairston*, 60 Ohio App.2d 220, 223, 396 N.E.2d 773 (3d Dist.1977)].

*Id*. at 29.

{¶16} In *State v. McGowan*, 8th Dist. Cuyahoga No. 96608, 2011-Ohio-6166, this

court applied the *Jells* rationale in reviewing whether the trial court properly admitted the lay witness testimony of three police officers regarding the bootprints they discovered at the scene. Officers testified that there was fresh snow on the ground, and the officers neither encountered other individuals nor observed inconsistent prints in the area. *Id*. at ¶ 18. One of the officers "observed that the tread pattern on the bottom of appellant's boots matched the tread pattern to the bootprints found [at the scene.]" *Id*. Another officer testified that "he made a visual match of the bootprint treads by comparing the tread of the boot itself to the prints in the snow next to it." *Id*.

**{¶17}** This court held that the officers' lay witness testimony was admissible because the officers were not testifying as experts, their testimony was rationally based on their observations and perceptions at the scene, and their testimony was helpful to a clear understanding of their testimony. *Id*. at ¶ 18; *see also State v. Grice*, 8th Dist. Cuyahoga No. 97046, 2012-Ohio-1938, ¶ 28 (police officer's testimony on comparison between a shoe mark on a door and defendant-appellant's shoes was properly admitted under Evid.R. 701.)

**{¶18}** Appellant argues that the instant matter is distinguishable from *McGowan* because the snow on the ground was not fresh, Officer Gonzalez did not testify about the distinct characteristics of appellant's boots, and there was no testimony regarding whether there were other footprints in the area. We disagree.

**{¶19}** In the instant matter, Officer Gonzalez saw appellant and another male

running through the area where officers subsequently observed "fresh" footprints and located a gun in a snow bank. Officer Gonzalez testified that there was a "line of footprints" from the area where officers detained appellant all the way to the snow bank in which the gun was located. Officer Gonzalez explained that he found the gun "right where the footprints were at."

{¶20} Officer Gonzalez testified that although the pile of snow in which the gun was recovered had been there for a while, the footprints in the snow "looked fresh." Officer Gonzalez testified that he "found two fresh footprints of a boot and the gun in the snow." Officer Gonzalez guessed that the footprints were made five to ten minutes before the officers examined them. Officer Gonzalez explained that he believed that the footprints were fresh because they had not been covered up by the wind and snow. Furthermore, Officer Gonzalez believed that the footprints were fresh based on his observation of the direction in which appellant had been running before the officers detained him.

{¶21} Officer Gonzalez testified that he looked at the footprints in the snow and asked what kind of shoes the males in custody were wearing. Officer Gonzalez explained that he compared the soles of the males' shoes to the footprints in the snow. After comparing the soles of appellant's shoes with the footprints next to the gun, Officer Gonzalez determined that they matched. Officer Gonzalez identified appellant in court as the individual he took the boot from that matched the footprints in the snow next to the

gun.

{¶22} After reviewing the record, we find that the trial court properly admitted Officer Gonzalez's lay witness testimony regarding the bootprints he discovered near the gun. Officer Gonzalez's testimony was rationally based on his observations and perceptions at the scene — both before and after officers detained appellant — and his testimony regarding the bootprints was helpful to a clear understanding of the determination of a fact in issue. Accordingly, appellant's first assignment of error is overruled.

### B. Sufficiency

{¶23} In his second assignment of error, appellant argues that the juvenile court's findings of delinquency are not supported by sufficient evidence.

{¶24} In determining whether a juvenile court's adjudication of delinquency is supported by sufficient evidence, we apply the same standard of review applicable to criminal convictions. *In re L.R.F.*, 2012-Ohio-4284, 977 N.E.2d 138, _ 12 (8th Dist.), citing *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989). The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386,

678 N.E.2d 541 (1997).

{¶25} In the instant matter, appellant was found delinquent of carrying concealed weapons, in violation of R.C. 2923.12(A)(2). R.C. 2923.12(A)(2) provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand * * * [a] handgun other than a dangerous ordinance." Furthermore, appellant was found delinquent of having a weapon while under disability, in violation of R.C. 2923.13(A)(2). R.C. 2923.13(A)(2) provides:

> [u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

{¶26} The state's evidence consisted exclusively of circumstantial evidence. "Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18, citing *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988). The Ohio Supreme Court "has 'long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

{¶27} The issue in this case is one of identity — whether appellant was the

individual that Holian and Corrigan observed with a gun. Appellant suggests that Holian and Corrigan observed a different individual carrying a gun during the incident. In support of his argument, appellant emphasizes that neither Holian nor Corrigan identified him in court as the individual they observed carrying a gun. Appellant's argument is misplaced.

{¶28} Generally, there is no requirement that a witness must make an in-court identification of a defendant in criminal cases. *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, _ 19, citing *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, ¶ 11, and *State v. Scott*, 3 Ohio App.2d 239, 244, 210 N.E.2d 289 (11th Dist.1965). Rather than requiring an in-court identification of a defendant, "direct or circumstantial evidence is sufficient to establish the identity of the accused as the person who committed the crime." *Lawwill* at _ 11, citing *State v. Irby*, 7th Dist. Mahoning No. 03 MA 54, 2004-Ohio-5929, _ 16-21.

{¶29} In the instant matter, neither Holian or Corrigan provided a detailed description of the face of the individual who was carrying a gun nor identified appellant in court as the individual they observed carrying a gun. Although there was no evidence in the state's case directly proving that appellant was the male who was carrying the gun, the state provided sufficient circumstantial evidence to establish the identity of the accused.

{¶30} Holian and Corrigan described the individual's clothing to the officers who

responded to the scene. Holian testified that the individual carrying the gun was wearing a dark winter jacket, tan Timberland boots, and dark blue jeans. Corrigan testified that the individual carrying the gun was wearing a dark colored "vinyl type jacket," and a black hat with a white band on it.

{¶31} Based on their observations of the clothing that the individual carrying the gun was wearing, Holian and Corrigan identified appellant as the individual who was carrying the gun. Holian testified that he identified the person who was carrying the gun in the back of a police car based on the clothing that he was wearing. Corrigan stated that the police officers had three individuals in custody, and that he identified the individual who was carrying the gun based on the clothing that he was wearing.

{¶32} The circumstantial evidence presented by the state — which also included appellant's admission that he had been running from a group of males that were pursuing him — when viewed in its totality, supported the inference that appellant was the male who was carrying a gun and who fled southbound on East 185th Street until officers detained him. Because circumstantial evidence inherently possesses the same probative value as direct evidence, we find that the circumstantial evidence in this case would allow the juvenile court to reasonably infer that appellant was the male who Holian and Corrigan observed carrying a gun, wearing a black jacket, tan boots, and a black hat, and running away from the scene.

{¶33} Appellant did not dispute that he was running away from a group of males

that had been chasing him, but he claimed that he did not have a gun. The resolution of conflicting testimony and the credibility of the witnesses remains within the province of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When reviewing a claim of sufficiency of the evidence, we are neither permitted to assess the credibility of witnesses nor otherwise weigh the evidence.

{¶34} Appellant further argues that the state failed to present sufficient evidence to establish that he possessed a firearm. First, appellant contends that neither Holian nor Corrigan identified the gun that the officers recovered from the snow bank as the gun that appellant was carrying. Appellant emphasizes that Holian testified that appellant's gun was a "Beretta style" and that appellant was not carrying a revolver, and that Corrigan did not see a white handle on appellant's gun.

{¶35} The gun recovered by the officers in the snow bank was a Colt .22 magnum, six-shot revolver. The revolver was black with a white grip on the handle.

{¶36} Holian testified that he only saw the tip or the muzzle of the gun, and that the gun's tip or muzzle was black. Holian explained that it was hard to tell whether the gun was a semiautomatic or a revolver, and that he could not determine the exact make and model of the gun. Holian thought the gun was "like a Beretta style" and guessed that the gun was a semiautomatic. Holian testified that he did not see the handle of the gun because of the way that appellant was holding it. Holian explained that when the officers showed him the gun that they recovered from a snow bank in the parking lot of

Muldoon's, he could not say whether the gun in the snow bank was the gun that appellant was carrying.

{¶37} Corrigan testified that he only saw the muzzle of the gun and that the gun's muzzle appeared to be dark gray. Corrigan explained that he could not tell what kind of gun appellant was carrying. Corrigan testified that he was unable to see the gun's grip when appellant was holding it. Corrigan stated that he could not determine whether the gun in the snow bank was the gun that appellant was carrying because the gun in the snow bank had a white grip on the handle and he did not see the handle of appellant's gun.

{¶38} Although neither Holian nor Corrigan positively identified the gun recovered by the officers as the gun that appellant was carrying, the circumstantial evidence presented by the state allowed the juvenile court to reasonably infer that appellant was carrying the revolver that the officers recovered in the snow bank.

{¶39} Second, appellant argues that the state failed to prove that the object he was carrying during the incident was in fact a gun or a deadly weapon, rather than a toy gun or BB gun. In support of his argument, appellant directs this court to Holian's testimony.

{¶40} Holian stated that it was "hard to say" whether appellant was carrying a real gun. Holian explained that the only observation that led him to question whether the gun was real was that the males pursuing appellant continued to chase him after appellant pointed the gun at them. However, Holian confirmed that he thought appellant's gun was real. Koeth, the firearms examiner, testified that she test fired the revolver that the

officers recovered from the snow bank and determined that the firearm was operable. Although Holian and Corrigan both saw the gun's muzzle, neither observed orange coloring on the tip of the gun, as toy guns typically have. The circumstantial evidence presented by the state allowed the juvenile court to reasonably infer that appellant was carrying an operable firearm.

{¶41} The state's theory of the case was that appellant was carrying a firearm during the chase, fled from the scene of the chase as officers were responding to the intersection of East 185th Street and Neff Road, and threw the firearm in the snow before the officers detained him. After reviewing the record, we find that the state presented sufficient evidence, if believed, to support that theory. Accordingly, the juvenile court's adjudications of delinquency are supported by sufficient evidence. Appellant's second assignment of error is overruled.

### C. Manifest Weight

{¶42} In his third assignment of error, appellant argues that the juvenile court's adjudications of delinquency are against the manifest weight of the evidence.

{¶43} In determining whether a juvenile court's adjudication of delinquency is against the manifest weight of the evidence, the applicable standard of review is the same standard applied in adult criminal convictions. *In re N.J.M.*, 12th Dist. Warren No. CA2010-03-026, 2010-Ohio-5526, ¶ 34; *see In re M.J.C.*, 12th Dist. Butler No. CA2014-05-124, 2015-Ohio-820, ¶ 28. In contrast to a sufficiency argument, a manifest

weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶44}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *DeHass*, 10 Ohio St.2d at 230, 227 N.E.2d 212. The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶45}** In support of his manifest weight challenge, appellant emphasizes that (1)

Holian and Corrigan could not identify appellant in court as the individual who was carrying a gun during the incident, (2) Holian and Corrigan could not identify the gun that the officers recovered in the snow as the gun that they saw appellant carrying, and (3) Holian's and Corrigan's descriptions of the gun that they saw appellant carrying were inconsistent with the gun that the officers recovered in the snow.

{¶46} After reviewing the record, we cannot say that the juvenile court's adjudications of delinquency are against the manifest weight of the evidence. First, regarding the identity of the individual carrying the gun, Holian and Corrigan both identified appellant approximately ten to 15 minutes after they left the scene. The firefighters provided a detailed description of the clothing that appellant was wearing to the officers. Based on their observations of appellant's clothing, Holian and Corrigan identified appellant as the individual who was carrying the gun during the chase. Furthermore, after the officers detained appellant, appellant informed Officer Holub that "a group of people in a vehicle were chasing him and that he was running from them."

{¶47} Second, regarding the identification and description of the gun, neither Holian nor Corrigan could say with certainty that the gun recovered by the officers was the gun that appellant was carrying during the chase. However, both Holian and Corrigan explained that they were unable to see the entire gun because of the way that appellant was holding it. Holian and Corrigan both explained that they were unable to see the handle of the gun and that they only saw the gun's muzzle. Holian testified that

the gun's muzzle was black and Corrigan testified that the gun's muzzle was dark gray.

**{¶48}** Furthermore, appellant mischaracterizes Holian's testimony regarding the style of the gun and whether it was a revolver or a semiautomatic. Based on his obstructed view of the gun, Holian "thought it looked like * * * a Beretta style" and guessed that it was a semiautomatic gun. However, Holian insisted that "it was hard to tell if [the gun] was semi-auto or a revolver."

**{¶49}** Appellant's theory of defense at trial was that the footprints next to the gun were left by another individual. The trial court heard Officer Gonzalez's testimony that he saw appellant and another male running through the area where the gun was recovered and that the footprints in the snow were "fresh." The juvenile court's adjudications of delinquency are not against the manifest weight of the evidence simply because the court chose to believe the state's version of the events rather than appellant's.

**{¶50}** The juvenile court, as the trier of fact, heard the evidence presented and was able to take into account inconsistencies in the testimony and to assess the credibility of the witnesses. We cannot say that this is the exceptional case where the evidence weighs heavily against the adjudications of delinquency nor that the juvenile court clearly lost its way and created a manifest miscarriage of justice. Accordingly, appellant's third assignment of error is overruled.

### III. Conclusion

{¶51} The trial court properly admitted Officer Gonzalez's lay witness testimony regarding the footprints he discovered near the gun. The juvenile court's adjudications of delinquency of carrying a concealed weapon and having a weapon while under disability are supported by sufficient evidence and are not against the manifest weight of the evidence.

{¶52} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR